UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
JASPER DIVISION

| | |
|---|---|
| **JAMES OBIE MANN,** | } |
| | } |
| Plaintiff, | } |
| | } |
| v. | } Case No.:  6:15-CV-00134-MMH |
| | } |
| **CAROLYN W. COLVIN,** | } |
| **Commissioner of the** | } |
| **Social Security Administration,** | } |
| | } |
| Defendant. | } |

## MEMORANDUM OPINION

Pursuant to 42 U.S.C. § 405(g), plaintiff James Obie Mann seeks judicial review of a final adverse decision of the Commissioner of Social Security. The Commissioner denied Mr. Mann's claim for a period of disability and disability insurance benefits. After careful review, the Court affirms the Commissioner's decision.

## I.     PROCEDURAL HISTORY

Mr. Mann applied for a period of disability and disability insurance benefits on November 18, 2011. (Doc. 6-6, pp. 4-10). Mr. Mann alleges that his disability began on October 1, 2011. (Doc. 6-6, p. 4). The Commissioner initially denied Mr. Mann's claim on February 22, 2012. (Doc. 6-5, pp. 9-11). Mr. Mann

requested a hearing before an Administrative Law Judge (ALJ). (Doc. 6-5, pp. 2-6). The ALJ issued an unfavorable decision on June 10, 2013. (Doc. 6-3, pp. 17-19). On November 20, 2014, the Appeals Council declined Mr. Mann's request for review (Doc. 6-3, pp. 2-4), making the Commissioner's decision final and a proper candidate for this Court's judicial review. *See* 42 U.S.C. § 405(g).

## II.   STANDARD OF REVIEW

The scope of review in this matter is limited. "When, as in this case, the ALJ denies benefits and the Appeals Council denies review," the Court "review[s] the ALJ's 'factual findings with deference' and [his] 'legal conclusions with close scrutiny.'" *Riggs v. Comm'r of Soc. Sec.*, 522 Fed. Appx. 509, 510-11 (11th Cir. 2013) (quoting *Doughty v. Apfel,* 245 F.3d 1274, 1278 (11th Cir. 2001)).

The Court must determine whether there is substantial evidence in the record to support the ALJ's factual findings. "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004). In making this evaluation, the Court may not "decide the facts anew, reweigh the evidence," or substitute its judgment for that of the ALJ. *Winschel v. Comm'r of Soc. Sec. Admin.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (internal quotations and citation omitted). If the ALJ's factual findings are supported by substantial evidence, then the Court "must affirm even if the evidence

preponderates against the Commissioner's findings." *Costigan v. Comm'r, Soc. Sec. Admin.*, 603 Fed. Appx. 783, 786 (11th Cir. 2015) (citing *Crawford*, 363 F.3d at 1158).

With respect to the ALJ's legal conclusions, the Court must determine whether the ALJ applied the correct legal standards. If the Court finds an error in the ALJ's application of the law, or if the Court finds that the ALJ failed to provide sufficient reasoning to demonstrate that the ALJ conducted a proper legal analysis, then the Court must reverse the ALJ's decision. *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991).

## III. SUMMARY OF THE ALJ'S DECISION

To determine whether a claimant has proven that he is disabled, an ALJ follows a five-step sequential evaluation process. The ALJ considers:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a residual functional capacity ("RFC") assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's RFC, age, education, and work experience.

*Winschel*, 631 F.3d at 1178.

In this case, the ALJ found that Mr. Mann has not engaged in substantial gainful activity since October 1, 2011, the alleged onset date. (Doc. 6-3, p. 22).

3

The ALJ determined that Mr. Mann suffers from the following severe impairments: specific learning disability; borderline intellectual functioning; degenerative disc disease and bulging disc at L2-3, L4-5, and L5-6; status post right femur fracture with surgery in 2003; and moderately severe chronic obstructive pulmonary disease. (Doc. 6-3, p. 22). The ALJ noted that Mr. Mann was diagnosed with attention deficit disorder when he was 13-years old; however, the evidence during the relevant period demonstrates that Mr. Mann no longer experiences significant, persistent symptoms. Therefore, the ALJ concluded that Mr. Mann's attention deficit disorder is a non-severe impairment. (Doc. 6-3, p. 22). Based on a review of the medical evidence, the ALJ concluded that Mr. Mann does not have an impairment or combination of impairments that meets or medically equals the severity of any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Doc. 6-3, p. 23).

Next, the ALJ evaluated Mr. Mann's residual functional capacity in light of his impairments. The ALJ determined that Mr. Mann has the RFC:

> to lift/carry twenty pounds occasionally and ten pounds frequently; stand/walk six hours in an eight-hour day; and sit six hours in an eight-hour day. He can occasionally push/pull with the right lower extremity; occasionally stoop, kneel, crouch, crawl; occasionally climb ramps and stairs and never climb a ladder, rope, and scaffolding. He can occasionally be exposed to dusts, fumes, odors, gases, and poor ventilation; understand, remember and carry out simple instructions; maintain attention and concentration for two hour time periods in order to complete an eight-hour workday; and adapt to

4

changes in the work place that are introduced gradually and infrequently.

(Doc. 6-3, p. 26). Based on this RFC, the ALJ concluded that Mr. Mann is able to perform his past relevant work as a store laborer. (Doc. 6-3, p. 29). Relying on testimony from a vocational expert, the ALJ found that additional jobs exist in the national economy that Mr. Mann can perform, including sorter, machine tender/plastic, and electronic accessory assembler. (Doc. 6-3, p. 30). Accordingly, the ALJ determined that Mr. Mann has not been under a disability within the meaning of the Social Security Act. (Doc. 6-3, p. 30).

## IV.  ANALYSIS

Mr. Mann argues that he is entitled to relief from the ALJ's decision because the administrative record does not contain substantial evidence to support the ALJ's decision that Mr. Mann has the concentration, persistence, and pace required to work and because the ALJ did not properly apply the Eleventh Circuit's three-part pain standard. The Court considers these arguments in turn.

### A.   Substantial Evidence Supports the ALJ's Decision that Mr. Mann Has the Concentration, Persistence, and Pace Required to Work.

In the context of a Social Security disability analysis, "'[c]oncentration, persistence, or pace refers to the [claimant's] ability to sustain focused attention and concentration sufficiently long to permit the timely and appropriate completion of tasks commonly found in work settings.'" *Kinnard v. Comm'r of Soc. Sec.*, 426

Fed. Appx. 835, 837 (11th Cir. 2011) (quoting 20 C.F.R. § 404, Subpart P, App. 1).

To support her findings regarding Mr. Mann's concentration, persistence, and pace, the ALJ reviewed and largely credited the findings of consultative examiner Dr. Robert L. Bare, Ph.D.  In January 2012, Dr. Bare completed a psychological evaluation of Mr. Mann.  (Doc. 6-8, pp. 8-11).  Dr. Bare found that Mr. Mann's immediate memory was good and that his thoughts were generally coherent and organized.  (Doc. 6-8, p. 9).  Regarding Mr. Mann's concentration and attention, Dr. Bare explained that "Mr. Mann was able to subtract serial threes with no errors.  He was able to attend to the course of the evaluation and was able to respond to the examiner's questions appropriately."  (Doc. 6-8, p. 9).  Dr. Bare noted that Mr. Mann's Full Scale IQ score of 79 falls within the borderline range of general intelligence.  (Doc. 6-8, p. 10).  Dr. Bare opined that Mr. Mann does not have mental health or cognitive impairments that would prevent him from obtaining employment.  (Doc. 6-8, p. 11).  Dr. Bare opined that Mr. Mann would not have difficulty managing the stresses of employment or interacting with coworkers and supervisors.  (Doc. 6-8, p. 11).

The ALJ afforded some weight to Dr. Bare's opinion but gave Mr. Mann the "benefit of the doubt" based on Mr. Mann's learning disability and borderline intellectual functioning; the ALJ found that Mr. Mann "can understand, remember

and carry out simple instructions; maintain attention and concentration for two hour time periods in order to complete an eight-hour work day; and adapt to changes in the work place that are introduced gradually and infrequently." (Doc. 6-3, p. 24).

The ALJ also considered the opinion of state agency reviewing physician Dr. Robert Estock, M.D. Dr. Estock reviewed the medical evidence and opined that Mr. Mann had mild restrictions of daily living, mild difficulties in maintaining social functioning, and mild difficulties in maintaining concentration, persistence or pace. (Doc. 6-8, p. 16). The ALJ assigned "good weight" to most of Dr. Estock's opinions, but the ALJ found that Mr. Mann's learning disability likely would preclude him from performing complex or detailed work tasks. (Doc. 6-3, p. 24).

After reviewing the evidence and giving Mr. Mann the full benefit of the doubt, the ALJ determined that Mr. Mann has a "moderate limitation in concentration, persistence and pace." (Doc. 6-3, p. 25). The ALJ found that "the combination of the claimant's education background, mental impairment, and the effects of his physical condition would reasonably restrict him from performing complex or detailed tasks." (Doc. 6-3, p. 25). The ALJ concluded that Mr. Mann could understand, remember, and carry out simple instructions in a work setting. (Doc. 6-3, p. 25).

The ALJ's finding that Mr. Mann has a moderate limitation in concentration, persistence, and pace is supported by substantial evidence. Even though the opinions of two physicians would support less restrictive findings, in her RFC finding, the ALJ imposed limitations on Mr. Mann's ability to maintain concentration, persistence, and pace. The ALJ did so after reviewing the record as a whole, giving Mr. Mann the benefit of the doubt, and accounting for Mr. Mann's learning disability.

Mr. Mann complains that the ALJ's hypothetical to the vocational expert did not properly account for limitations in concentration, persistence, and pace. (Doc. 10, p. 11). "'[F]or a vocational expert's testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments.'" *Winschel*, 631 F.3d at 1180 (quoting *Wilson v. Barnhart*, 284 F.3d 1219, 1227 (11th Cir. 2002) (per curiam)). An ALJ is not required to "include findings in the hypothetical that the ALJ [has] properly rejected as unsupported." *Crawford*, 363 F.3d at 1158.

At the hearing, the ALJ posed a hypothetical to the vocational expert that included a number of exertional and environmental limitations. The hypothetical also asked the vocational expert to assume that the claimant "can understand, remember, and carry out simple instructions" and "can maintain attention, concentration, for two-hour time periods in order to complete an eight-hour work

day." (Doc. 6-3, p. 61). The administrative record contains medical records that support these limitations. Therefore, the ALJ properly accounted for Mr. Mann's limitations in concentration, persistence, and pace in the hypotheticals that she posed to the vocational expert. *See e.g.*, *Washington v. Social Sec. Admin., Comm'r*, 503 Fed. Appx. 881, 883 (11th Cir. 2013) ("The ALJ also explicitly and implicitly took into account Washington's moderate limitations in maintaining concentration, persistence, or pace by including the restrictions that Washington was limited to performing only simple, routine repetitive tasks with up to three-step demands, and only occasional changes in the work setting, judgment, or decision making. Because the evidence showed that Washington could perform simple, routine tasks, the ALJ's hypothetical question to the VE which included this limitation adequately addressed Washington's limitations as to concentration, persistence, or pace."); *Rosario v. Comm'r of Soc. Sec.*, 490 Fed. Appx. 192, 195 (11th Cir. 2012) (substantial evidence supported the VE's testimony because the ALJ's hypotheticals accounted for moderate limitations in concentration, persistence, and pace supported by "independent assessments of three doctors").

Mr. Mann's brief suggests that he lost three jobs because of his inability to maintain concentration, persistence, and pace. (Doc. 10, p. 12). This assertion is not consistent with the record. For example, Mr. Mann explained during the administrative hearing that he lost his most recent job as a store laborer at

9

America's Thrift Store because he "was having back problems, I was moving too slow, I wasn't getting the job done on time." (Doc. 6-3, p. 41). Mr. Mann told Dr. Bare that lost his job at America's Thrift Store because "he was unable to lift the bags of clothes due to his pain." (Doc. 6-8, p. 8). Mr. Mann testified that he lost his job at a chicken plant because he missed too many days of work because his wife was experiencing complications with a pregnancy, and he had trouble standing on the concrete floors. (Doc. 6-3, pp. 41-42). Mr. Mann explained that he lost his job as a floor technician at Wal-Mart because he "got wrote up too many times and I didn't get -- I was late getting my part done, it was another writeup, and they fired me for it." (Doc. 6-3, p. 42).

Mr. Mann's testimony does not demonstrate that he lost three jobs because of limitations on his ability to concentrate or fulfill the other mental demands of those jobs. Therefore, the Court is not persuaded by Mr. Mann's argument that "his failed efforts in his last three jobs clearly demonstrate his inability to maintain concentration, persistence, and pace required to perform his past work or any other jobs." (Doc. 10, p. 12).

> **B. Substantial Evidence Supports the ALJ's Credibility Determination.**

"To establish a disability based on testimony of pain and other symptoms, the claimant must satisfy two parts of a three-part test by showing '(1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence

confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain.'" *Zuba-Ingram v. Commissioner of Social Sec.*, 600 Fed. Appx. 650, 656 (11th Cir. 2015) (quoting *Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002) (per curiam)). A claimant's testimony coupled with evidence that meets this standard "is itself sufficient to support a finding of disability." *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991) (citation omitted). If the ALJ discredits a claimant's subjective testimony, the ALJ "must articulate explicit and adequate reasons for doing so." *Wilson*, 284 F.3d at 1225. "While an adequate credibility finding need not cite particular phrases or formulations[,] broad findings that a claimant lacked credibility . . . are not enough. . . ." *Foote v. Chater*, 67 F.3d 1553, 1562 (11th Cir. 1995) (per curiam).

The ALJ summarized Mr. Mann's testimony regarding his subjective complaints of back and leg pain. (Doc. 6-3, p. 26). The ALJ then properly recited the pain standard and found that Mr. Mann's "medically determinable impairments could reasonably be expected to cause some of the alleged symptoms." (Doc. 6-3, p. 26). The ALJ also articulated explicit and adequate reasons for rejecting Mr. Mann's testimony about the severity of his pain.

Mr. Mann testified at his hearing that he suffered from back pain, which he attributed to three injured discs in his back and a steel rod in his right leg. (Doc. 6-

3, p. 41). Mr. Mann testified that he experiences back pain within two to three minutes of moving and that he experiences pain when he bends over. (Doc. 6-3, p. 44). Mr. Mann stated that he could lift four to five pounds and could sit for 20 to 30 minutes at a time. (Doc. 6-3, p. 51). Mr. Mann also testified that he had problems kneeling, crouching, and crawling. (Doc. 6-3, p. 51). On a work history report dated December 28, 2011, Mr. Mann noted that his lower back pain limited his activity, and the pain had not improved over the years. (Doc. 6-7, p. 19).

When evaluating a claimant's subjective symptoms, the ALJ may consider a range of factors, such as: (1) the claimant's daily activities; (2) the nature and intensity of pain and other symptoms; (3) precipitating and aggravating factors; (4) effects of medications; (5) treatment or measures taken by the claimant for relief of symptoms; and (6) other factors concerning functional limitations. *Moreno v. Astrue*, 366 Fed. Appx. 23, 28 (11th Cir. 2010) (citing 20 C.F.R. § 404.1529(c)(3)).

The ALJ determined that Mr. Mann's testimony regarding his pain was not entirely credible because the testimony was inconsistent with the evidence in the administrative record. First, the ALJ explained that since Mr. Mann injured his back and leg in a 2003 car accident, Mr. Mann worked several jobs, which demonstrated that he was capable of performing at least light exertional work following his injury. (Doc. 6-3, p. 27; *see also* Doc. 6-7, p. 12; Doc. 6-9, p. 50).

Next, the ALJ reviewed the medical evidence and found that Mr. Mann's "lack of medications and lack of medical treatment do not support [his] allegations of disabling pain." (Doc. 6-3, p. 27). Mr. Mann testified that his back and leg pain worsened in October 2011. (Doc. 6-3, p. 52). The ALJ noted, however, that Mr. Mann was not taking prescription medication and did not seek treatment for his leg or back pain after his alleged onset date. (Doc. 6-3, p. 27). Mr. Mann testified that he last received a prescription for pain medication to treat his back and leg pain from Dr. Scott Boswell. (Doc. 6-3, p. 27, 50). The medical records demonstrate that Mr. Mann last visited Dr. Boswell in March 2010, more than one year before the alleged October 1, 2011 onset date. (Doc. 6-8, p. 54). Mr. Mann injured his knee in July 2011, and he received prescription medication to treat the pain. (Doc. 6-8, pp. 101, 107). There are no medical records that indicate that Mr. Mann sought additional treatment for his knee or back pain following that initial treatment. Physical examinations in 2012 revealed no musculoskeletal complaints and normal musculoskeletal findings. (Doc. 6-9, pp. 4-7, 28-29). *See* SSR 96-7P 1996 WL 374186 at \*7 (stating that an "individual's statements may be less credible if the level or frequency of treatment is inconsistent with the level of complaints").

The medical evidence also does not support Mr. Mann's subjective complaints of pain associated with his respiratory problems. The ALJ

13

acknowledged that Mr. Mann "would be limited in the jobs that he performs due to his chronic obstructive pulmonary disease" but that "there is nothing in the record to indicate that the claimant could not perform the less than light residual functional capacity." (Doc. 6-3, p. 28). The record supports this conclusion. In September 2009, Dr. Boswell treated Mr. Mann's right-sided chest wall pain. Dr. Boswell found that Mr. Mann's lungs were clear, and his heart size was normal. (Doc. 6-8, p. 72). Dr. Boswell identified no active chest disease. (Doc. 6-8, p. 72). In October 2009, Dr. Boswell diagnosed Mr. Mann with chronic obstructive pulmonary disease and ordered a pulmonary consult. (Doc. 6-8, p. 73). Dr. Boswell noted Mr. Mann's COPD again in December 2009. (Doc. 6-8, p. 62). Mr. Mann received prescription medication for bronchitis in January 2012. (Doc. 6-9, p. 12). A January 2012 x-ray revealed no focal filtrate, effusion, or pneumothorax. (Doc. 6-9, p. 19). In January 2012, Mr. Mann sought treatment for a cough and fever. The physician who examined Mr. Mann found that Mr. Mann was not hypoxic and did not suffer from respiratory distress. (Doc. 6-9, p. 31).

Substantial evidence supports the ALJ's decision to discredit Mr. Mann's testimony regarding his respiratory symptoms because Mr. Mann's subjective complaints of pain are inconsistent with the objective medical evidence. *See Duval v. Comm'r of Soc. Sec.*, 628 Fed. Appx. 703, 712 (11th Cir. 2015) ("The ALJ explained that Mr. Duval's testimony was not credible to the extent it was

unsupported by the objective medical evidence and then discussed at length why similar opinions from Mr. Duval's treating medical providers were unsupported by the record. From this discussion, we can clearly infer what testimony from Mr. Duval the ALJ found lacking in credibility and why it was discredited."); *Hernandez v. Comm'r of Social Sec.*, 523 Fed. Appx. 655, 657 (11th Cir. 2013) ("The ALJ found that the objective medical records and Hernandez's self-reports to her doctors did not support the alleged severity of her symptoms, and that the records were inconsistent with the degree of impairment alleged by Hernandez.").

Mr. Mann argues that he is unable to afford to see a doctor and take medication. (Doc. 10, p. 14). The Eleventh Circuit has recognized that "if one's disability could be cured by certain treatment, yet treatment is not financially available, then a condition which is disabling in fact continues to be disabling in law." *Belle v. Barnhart*, 129 Fed. Appx. 558, 560 n.1 (11th Cir. 2005) (citing *Dawkins v. Bowen*, 848 F.2d 1211, 1213 (11th Cir. 1988)).

Mr. Mann's argument that the ALJ failed to consider the impact of his poverty on his ability to obtain treatment fails for two reasons. First, Mr. Mann has not demonstrated how his poverty prevented him from receiving or obtaining treatment. The record demonstrates that Mr. Mann sought treatment for his respiratory issues at least three times in 2012. (Doc. 6-9, pp. 4-7; Doc. 6-9, p. 28; Doc. 6-9, p. 40; Doc. 6-9, p. 44). Yet, Mr. Mann did not seek treatment for his

back or neck after the alleged onset date. Second, even if Mr. Mann were unable to afford treatment, the ALJ did not solely rely on Mr. Mann's choice of treatment to make her determination. *See Ellison v. Barnhart*, 355 F.3d 1272, 1275 (11th Cir. 2003) (ALJ's failure to consider claimant's ability to afford medication was not in error because the ALJ did not significantly base his decision that the claimant was not disabled on a finding of noncompliance with prescribed treatment). The ALJ also considered Mr. Mann's daily activities. (Doc. 6-3, p. 27).

With respect to those daily activities, during a visit on January 24, 2012 with consultative examiner Dr. David Aarons, Mr. Mann stated that he was capable of walking two blocks, sitting for 30 minutes, and standing for 30 minutes. Although he could not drive very far, Mr. Mann was capable of dressing himself, bathing himself, and feeding himself. Mr. Mann also completed light housework and yardwork. (Doc. 6-8, p. 4). Mr. Mann noted that he cared for his three boys, prepared meals, cut grass with a riding lawn mower, and washed clothes. (Doc. 6-7, pp. 24-25). This evidence supports that ALJ's finding that that these activities are inconsistent with Mr. Mann's allegations of disabling pain. *See Lanier v. Comm'r of Soc. Sec.*, 252 Fed. Appx. 311, 314 (11th Cir. 2007) (finding no reversible error in the ALJ's assessment of the claimant's credibility when the ALJ determined that the claimant's testimony about the amount of pain was inconsistent

with her description of her activities, which included household chores like laundry and vacuuming, fishing if someone helped her reel in the fish, and driving short distances).

In making her credibility determination, the ALJ thoroughly considered the nature and frequency of Mr. Mann's treatment, his reported daily activities, his work history, and the medical opinion evidence of record. (Doc. 6-3, pp. 24-29). The ALJ reached her decision after assessing the credibility of Mr. Mann's claims in light of the record as whole. (Doc. 6-3, p. 26). Substantial evidence supports the ALJ's credibility findings. *See Dyer v. Barnhart*, 395 F.3d 1206, 1212 (11th Cir. 2005) ("In sum, the ALJ considered [the claimant's] activities of daily living, the frequency of his symptoms, and the types and dosages of his medications, and concluded that [the claimant's] subjective complaints were inconsistent with his testimony and the medical record. The ALJ thus adequately explained his reasons and it was reversible error for the district court to hold otherwise."); *Carman v. Astrue*, 352 Fed. Appx. 406, 408 (11th Cir. 2009) ("The ALJ articulated various inconsistencies in [the claimant's] evidence that a reasonable person could conclude supported the ALJ's finding that [the claimant's] subjective complaints of pain were not entirely credible.").

## V. CONCLUSION

For the reasons discussed above, the Court finds that substantial evidence supports ALJ's decision, and the ALJ applied proper legal standards. The Court will not reweigh the evidence or substitute its judgment for that of the Commissioner. Accordingly, the Court affirms the Commissioner. The Court will enter a separate final judgment consistent with this memorandum opinion.

**DONE** and **ORDERED** this August 31, 2016.

_____
**MADELINE HUGHES HAIKALA**
UNITED STATES DISTRICT JUDGE